UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD B. FAGAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MASS MUTUAL LIFE INVESTORS' )<br>SERVICES, INC., et al., )<br>)<br>Defendants. ) | Case No. 3:15-cv-30049-MAP |

REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S APPLICATION TO
PROCEED WITHOUT PREPAYMENT OF FEES AND FURTHER RECOMMENDATION
FOR SUMMARY DISMISSAL PURSUANT TO 28 U.S.C. § 1915(e)(2)
(Docket #2)

ROBERTSON, U.S.M.J.

For the reasons set forth below, the court recommends allowing Plaintiff's Application to Proceed Without Prepayment of Fees, but further recommends that the complaint be dismissed pursuant to the provisions of 28 U.S.C. § 1915(e)(2). *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1).

I. Background

On March 23, 2015, Plaintiff Richard B. Fagan ("Fagan") filed an Application to Proceed Without Prepayment of Fees (Docket #2), along with a self-prepared verified complaint (Docket #1). Fagan styles his complaint as being brought under Fed. R. Civ. P. 60 to reopen Case No. 3:11-cv-30184-MAP (hereinafter, "*Fagan I*").

Fagan filed *Fagan I* against Mass Mutual Life Investors' Services, Inc. ("MMLISI"), his former employer, as well as MMLISI employees Erin Tobin, Sergio Flores, and Brandy Alexander, and "Doe Defendants yet unnamed" (hereinafter, collectively, the "*Fagan I* Defendants") in the Superior Court of Massachusetts, Hampden County. In his *pro se* verified

amended complaint in *Fagan I*, Fagan asserted 80 separate causes of action, all of which stemmed from the *Fagan I* Defendants' alleged unlawful treatment of Fagan during his employment with MMLISI and in connection with his termination on March 24, 2009. Boiled down to their essence, the causes of action consisted of claims of age discrimination, wage violations, retaliation in connection with a request for unpaid wages, retaliation for pursuing a consumer complaint regarding alleged unlawful conduct on the part of MMLISI, defamation, violation of the covenant of good faith and fair dealing, hostile work environment, conspiracy, negligent supervision, and negligent management. On June 30, 2011, the *Fagan I* Defendants removed the matter to this court pursuant to 28 U.S.C. § 1441 based on this court's having original jurisdiction over Fagan's federal Age Discrimination in Employment Act claims, 29 U.S.C. § 621 et seq. On July 11, 2013, this court (Ponsor, J.) granted the *Fagan I* Defendants' Motion for Summary Judgment and entered judgment against Fagan and for the *Fagan I* Defendants. Fagan appealed. On June 18, 2014, the First Circuit affirmed the judgment of this court.

In the instant case (hereinafter, "*Fagan II*"), Fagan seeks to have *Fagan I* reopened "in the light of newly revealed material evidence," relating to what Fagan claims are unpaid earned overtime wages (Docket #1 at 2). Specifically, Fagan claims that Katherine Pacella, as counsel for the *Fagan I* Defendants, revealed during the *Fagan I* appeal proceedings that MMLISI paid other employees, but not Fagan, overtime wages for time spent studying for a Series 7 certification exam (*id*. at 5). Fagan asserts that "[t]he unpaid wages charged in this new complaint were unknown to the plaintiff as payable under the laws of Massachusetts and were concealed from the plaintiff and from the Court throughout the course of the previously dismissed Federal Court action" (*id*. at 2). Contrary to Fagan's assertions, he in fact sought these

wages in *Fagan I*, wherein he demanded, among other relief, "Unpaid study hours for the Series 7 exam: 120 hours @ time and a half = $3116.40" (*Fagan I* Docket #4-4 at 38). He now avers that he spent 146.5 hours studying for the exam, for which he should have been paid $4,001.00 (Docket #1 at 5). He claims that he is entitled to have his single damages trebled under Massachusetts law and further doubled as punitive damages, in an amount he calculates at $23,994.00 (*id*. at 5).[1]

Fagan re-names all of the *Fagan I* Defendants and names additional MMLISI employees Frances Thomas, Kate Quinlan, Sam Toskin, Megan Burke, Kathleen Mayko, Ellen Rawson, and Steven Crowther, as well as Katherine Pacella, as counsel for the *Fagan I* Defendants (hereinafter, collectively, the "*Fagan II* Defendants"). Fagan asserts seventeen causes of action, fifteen of which stem from the same alleged unlawful treatment Fagan suffered during his employment with MMLISI and in connection with his termination on March 24, 2009 that formed the basis of *Fagan I*. Only two of the causes can be considered new. One is a claim of witness intimidation in violation of 18 U.S.C. § 1512. The other is a claim for fraud in connection with what Fagan claims was essentially the *Fagan I* Defendants' and Pacella's discovery abuse in concealing the evidence that other MMLISI employees were paid overtime wages for time spent studying for the Series 7 certification exam.

II. Discussion

A. Plaintiff's Request to Proceed Without Prepayment of Fees

Pursuant to 28 U.S.C. § 1915, a district court may authorize the commencement of a civil action without the prepayment of fees (i.e. *in forma pauperis*) if it is satisfied that the would-be plaintiff cannot pay the filing fees necessary to pursue the action. *See* 28 U.S.C. § 1915(a)(1).

---

[1] The court notes that Fagan's single damages of $4,001.00 tripled and then doubled would actually be $24,006.00.

Upon review of Fagan's financial disclosures, although it is a close case, the court concludes that he is without income or assets to pay the filing fee and recommends that his request to proceed *in forma pauperis* be allowed.

B. Screening

Because Plaintiff has sought to proceed without the prepayment of the filing fee, the complaint is subject to review to determine if it satisfies the requirements of the *in forma pauperis* statute, 28 U.S.C. § 1915(e)(2). Section 1915 authorizes the federal courts to dismiss an action at any time if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2). A complaint is frivolous if it "lacks an arguable basis either in law or fact," a standard which "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). In conducting the preliminary screening, the court construes a plaintiff's *pro se* complaint generously. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 13 (1st Cir. 2004).

1. Request to Reopen *Fagan I* Pursuant to Fed. R. Civ. P. 60

As set forth above, Fagan styles his complaint as one to reopen *Fagan I* pursuant to Fed. R. Civ. P. 60. His asserted ground for reopening *Fagan I* consists of the so-called newly discovered evidence that MMLISI paid other employees overtime wages for time spent studying for the Series 7 examination, evidence Fagan asserts the *Fagan I* Defendants and Pacella fraudulently concealed from him and the court.

Rule 60(b) provides in pertinent part that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the

following reasons: … (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [or] (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b).[2] The rule provides that such relief is available for "no more than one year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). The one-year time limit is expressed in mandatory terms, and the First Circuit has characterized it as an "absolute bar." *Boston Gas Co. v. Century Indem. Co.*, 754 F. Supp. 2d 268, 271 (D. Mass. 2010) (citing *United States v. Berenguer*, 821 F.2d 19, 21 (1st Cir. 1987)). *See also Freedom, N.Y., Inc. v. United States*, 438 F. Supp. 2d 457, 465 (S.D.N.Y. 2006) ("[T]he plain language of clauses (2) and (3) [of paragraph (b)] creates no exception for evidence or fraud discovered more than a year after judgment."). The one-year period begins to run as of the date of the final judgment or order from which the plaintiff seeks relief and is not tolled by an appeal. *See Boston Gas Co.*, 754 F. Supp. 2d at 271-272.

This court entered its final judgment in *Fagan I* on June 11, 2013. Fagan filed the instant proceeding on March 23, 2015, well over one year after the entry of judgment. Accordingly, even if Fagan were able to meet the standards for relief from final judgment pursuant to Rule 60(b)(2) or (3) for newly discovered evidence or fraud, an issue the court will not analyze here, he is absolutely barred by the rule's mandatory one-year time limit.[3] Accordingly, to the extent that

---

[2] The court notes that by filing a new action rather than a motion in *Fagan I*, Fagan failed to comply with the appropriate procedure for seeking Rule 60 relief. However, due to Fagan's status as a *pro se* litigant, the court will proceed to analyze the request anyway.

[3] Fagan claims in conclusory terms that the *Fagan I* Defendants' and Pacella's actions in concealing the so-called newly discovered evidence also amount to a fraud on the court. The provisions of Fed. R. Civ. P. 60(b) do not limit a court's power to "set aside a judgment for fraud on the court," Fed. R. Civ. P. 60(d)(3), and this power is not subject to the one-year time limit. *See King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002). However, "'fraud upon the court as distinguished from fraud on an adverse party is limited to fraud which seriously

Fagan seeks to reopen *Fagan I* pursuant to Fed. R. Civ. P. 60 through his complaint in *Fagan II*, the action should be dismissed.

> 2. Claim Preclusion

The doctrine of federal claim preclusion bars Fagan from bringing a separate suit to accomplish essentially the same result of reopening *Fagan I*.[4] Where a federal court exercising federal question jurisdiction issues a judgment, the applicability of claim preclusion is a matter of federal law. *Maher v. GSI Lumonics, Inc.*, 433 F.3d 123, 126 (1st Cir. 2005). "Federal claim preclusion law bars parties from relitigating claims that could have been made in an earlier suit, not just claims that were actually made." *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 14 (1st Cir. 2010) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). Three essential elements must be met for preclusive effect to apply: "(1) the earlier suit resulted in a final judgment on the merits; (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related; and (3) the parties in the two suits are sufficiently identical or closely related." *Id.* at 15 (citing *Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 329 (1st Cir. 2009)).

The first element for the application of claim preclusion plainly is satisfied here. This court entered a final judgment in *Fagan I* on June 11, 2013, a judgment that was affirmed on appeal.

Turning to the second element, the court uses a "transactional approach" to determine

---

affects the integrity of the normal process of adjudication.'" *Id*. (quoting *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988)). Not even garden-variety fraud, let alone discovery abuse as Fagan alleges here, rises to the level of a fraud upon the court. *See Geo. P. Reintjes Co., Inc., v. Riley Stoker Corp.*, 71 F.3d 44, 48 (1st Cir. 1995).

[4] As a general matter, claim preclusion is an affirmative defense that must be pleaded under Fed. R. Civ. P. 8(c). However, "[e]ven without a motion, 'a court on notice that it has previously decided an issue may dismiss the action *sua sponte*, consistent with the *res judicata* policy of avoiding judicial waste.'" *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003) (citing *Bezanson v. Bayside Enterps., Inc.*, 922 F.2d 895, 904 (1st Cir. 1990)).

whether the causes of action asserted in earlier and later suits are sufficiently identical or related. *See id*. "A 'cause of action' in this context includes 'all the rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which they arose.'" *Id*. (quoting *United States v. Cunan*, 156 F.3d 110, 114 (1st Cir. 1998)). The First Circuit has explained:

> This inquiry does not turn on the labels the plaintiff attaches to its various claims, but rather "boils down to whether the causes of action arise out of a common nucleus of operative facts." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n.*, 142 F.3d 26, 38 (1st Cir. 1998). We determine that by looking to factors such as "whether the facts are related in time, space, origin or motivation," "whether they form a convenient trial unit," and whether treating them as a unit "conforms to the parties' expectations.'" *In re Iannochino*, 242 F.3d 36, 46 (1st Cir. 2001) (quoting *Restatement (Second) of Judgments* §24 (1982) (internal quotation marks omitted)).

*Id*.

Fifteen of the seventeen claims Fagan asserts in the instant matter are employment-related claims Fagan already asserted in *Fagan I*. Fagan attached the same labels to many of the claims. However, even as to those claims to which Fagan may apply slightly different labels, there is no question that they arise from a common nucleus of facts, namely Fagan's employment with MMLISI and his termination on March 24, 2009. Indeed, three pages of Fagan's complaint are dedicated to summarizing *Fagan I*, followed by four pages of "background," consisting of Fagan's rehashing of the alleged unlawful treatment he experienced while employed by MMLISI and in connection with his termination. Despite his assertions to the contrary, Fagan even advanced a claim regarding the so-called newly discovered evidence, insofar as Fagan explicitly sought overtime pay for the time he spent studying for the Series 7 certification exam. Thus, the second essential element of federal claim preclusion is satisfied.

7

Turning to the third and final element, "[c]laim preclusion does not merely bar a plaintiff from suing the same defendant for the same claims in a different action; under certain circumstances, a defendant not a party to an original action may also use claim preclusion to defeat the later suit." *Id.* at 17. Under the doctrine of claim preclusion, a plaintiff "cannot obtain a second chance at a different outcome by bringing related claims against closely related defendants at a later date." *Id*. at 14. The old and new defendants need not be in privity; rather they must only be sufficiently "closely related." *Id*. at 17.

Here, the newly-named defendants (with the exception of Katherine Pacella[5]) are seven additional employees of MMLISI to whom Fagan ascribes the same alleged wrongful treatment in connection with his employment and termination, which he already had the opportunity to fully and unsuccessfully litigate in *Fagan I*. Thus, the newly named defendants are sufficiently "closely related" to the *Fagan I* Defendants for purposes of the application of claim preclusion. *See, e.g., Silva v. Bedford*, 660 F.3d 76, 80 (1st Cir. 2011) (holding that two police officers and the City for whom they worked were sufficiently "closely related" for purposes of claim preclusion); *Steele v. Ricigliano*, 789 F. Supp. 2d 245, 249 (D. Mass. 2011) (holding that the new defendants, who were directors, managers, employees, or affiliates of, or were acting in concert with, the defendants named in the first action were sufficiently "closely related" for purposes of claim preclusion).[6]

---

[5] While Fagan does not identify which of his seventeen claims he is asserting against which of the *Fagan II* Defendants, the only claim that can be read as being asserted against Pacella is the fraud claim, which will be addressed below. The only factual allegations against Pacella in the *Fagan II* complaint relate to her role as defense counsel in *Fagan I*. There are no allegations she had any involvement in the underlying pre-litigation employment-related occurrences.

[6] This conclusion is buttressed by the fact that, while Fagan did not specifically name these seven individuals as defendants in *Fagan I*, he did identify six of the seven in his verified amended complaint in *Fagan I* and attributed various wrongful acts to them (*Fagan I* Docket #4-4). For example, Fagan identified Thomas as the head of MMLISI (*id*. at 34); asserted that Quinlan

Because the three elements of federal claim preclusion are satisfied as to the fifteen employment-related causes of action, Fagan is precluded by the prior judgment in *Fagan I* from bringing the instant action as a separate suit as to those claims, and they should be dismissed.

### 3. Fagan's Two Remaining Claims

#### (a) Witness Intimidation

Fagan asserts a new claim for witness intimidation in violation of 18 U.S.C. § 1512. Section 1512 is a federal criminal statute, and there is no authority to permit a private cause of action under it. "This is because a private citizen, such as [Fagan], lacks a judicially cognizable interest in the federal prosecution or non-prosecution of another." *Myers v. Davenport*, No. 13-13149-PBS, 2014 WL 2805278, at *1 (D. Mass. June 18, 2014) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)) (dismissing a *pro se* complaint pursuant to 28 U.S.C. § 1915 where the plaintiff alleged violations of a federal statute criminalizing theft from an organization receiving federal funds). Accordingly, this claim also is subject to dismissal.

#### (b) Fraud

Fagan's final remaining claim is one for fraud, a state law tort claim, in connection with what he claims was the *Fagan I* Defendants' and Pacella's discovery abuse in concealing evidence that other MMLISI employees were paid overtime wages for time spent studying for the Series 7 certification exam. This final remaining claim is subject to dismissal on jurisdictional grounds.

---

conspired with *Fagan I* Defendant Tobin to deprive him of back wages (*id*. at 35); asserted that Toskin retaliated against him (*id*. at 34) and conspired with *Fagan I* Defendants Flores and Alexander to deprive him of his employment and to deprive him of back wages (*id*. at 35); identified Burke as a witness (*id*. at 39); and asserted that Rawson and Crowther abused process and engaged in tortious interference (*id*. at 35). Given this background, Fagan certainly could have named these seven MMLISI employees as defendants in *Fagan I* and is precluded from bringing a new case against them to try to get a different result.

Federal courts are courts of limited jurisdiction, "and the requirement of subject-matter jurisdiction 'functions as a restriction on federal power.'" *Fafel v. Dipaola*, 399 F.3d 403, 410 (1st Cir. 2005) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). A court has an obligation to inquire *sua sponte* into its own subject matter jurisdiction. *See McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004) (citing *In re Recticel Foam Corp.*, 859 F.2d 1000, 1002 (1st Cir.1988); Fed. R. Civ. P. 12(h)(3)). "The existence of subject-matter jurisdiction 'is never presumed.'" *Fafel*, 399 F.3d at 410 (quoting *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998)). Rather, federal courts "must satisfy themselves that subject-matter jurisdiction has been established." *Id.* (citing *Ins. Corp. of Ireland*, 456 U.S. at 702). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Federal district courts may exercise jurisdiction over civil actions arising under federal laws, *see* 28 U.S.C. § 1331, and over certain actions in which the parties are of diverse citizenship and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332. A case presents a federal question for purposes of section 1331 "if 'a well-pleaded complaint establishes that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983)). "A federal court exercising jurisdiction over an asserted federal-question claim must also exercise supplemental jurisdiction over asserted state-law claims that arise from the same nucleus of operative facts." *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256 (1st Cir. 1996) (citing 28 U.S.C. § 1367(a) (providing for supplemental jurisdiction)). Where a party seeks to invoke diversity jurisdiction

under section 1332, the parties must be of complete diversity and the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332. "The burden of proving the existence of … diversity jurisdiction … lies with the pleader." *Kale v. Combined Ins. Co. of Am.*, 736 F. Supp. 1183, 1184 n. 3 (D. Mass. 1990) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

In the Civil Cover Sheet accompanying his complaint, Fagan lists the Basis of Jurisdiction as being a federal question and identifies Fed. R. Civ. P. 60 as the federal civil statute under which he is filing. For the reasons set forth above, Fagan cannot reopen *Fagan I* pursuant to Fed. R. Civ. P. 60. Further, he is estopped by federal claim preclusion from initiating a new action to relitigate the federal claims that formed the basis for federal question jurisdiction in *Fagan I*. Finally, Fagan cannot premise federal question jurisdiction on the basis of 18 U.S.C. § 1512 because it is a federal criminal statute he lacks the authority to pursue as a private cause of action. Thus, this court does not have original federal question jurisdiction under section 1331, and there is no basis for its exercise of supplemental jurisdiction under section 1367 over Fagan's state law claim for fraud. *See, e.g., Kaw Nation ex rel. McCauley v. Lujan*, 378 F.3d 1139, 1142 (10th Cir. 2004) ("[S]upplemental jurisdiction under 28 U.S.C. § 1367 must be predicated upon original subject matter jurisdiction in the district court. … [B]ecause Plaintiffs' complaint does not present a federal question, there was no original jurisdiction in the district court, and hence no basis for supplemental jurisdiction either.").[7]

---

[7] Even if the court has federal question jurisdiction in the instant action preceding any dismissal of Fagan's asserted federal claims, the termination of those foundational federal claims sets the stage for the court's exercise of informed discretion to decline to adjudicate the lingering state law claim. *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256-57 (1st Cir. 1996) (citing 28 U.S.C. § 1367(c)(3)) (authorizing a district court to decline adjudication of lingering state-law claims after it has dismissed "all claims over which it has original jurisdiction"). "No categorical rule governs the analysis; a court must weigh concerns of comity, judicial economy, convenience, and fairness." *Redondo Const. Corp. v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011) (citing *Roche,* 81 F.3d at 257; *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Fagan has not sought to avail himself of diversity jurisdiction under section 1332, and a review of his complaint shows that it also is lacking. The court is unable to ascertain on the basis of Fagan's complaint whether there is complete diversity between the parties, as Fagan's complaint does not set forth the domiciles of the individual defendants.[8] *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (complete diversity does not exist where any defendant and any plaintiff are domiciled in the same state). However, reviewing the complaint in the light most favorable to Fagan reveals that it fails to meet the amount-in-controversy requirement. Fagan seeks single damages in connection with the fraud of $4,001.00, which he claims he is entitled to have trebled and doubled. Even assuming Fagan is entitled to these multiple damages, the amount in controversy still falls far below the $75,000.00 jurisdictional requirement.

For these reasons, the court lacks subject matter jurisdiction over Fagan's only remaining possibly viable state law tort claim for fraud and it is subject to dismissal.

III.   Conclusion

The court recognizes that "basic fairness, as well as 'sound prudential reasons,' counsel against most uses of the power to dismiss cases *sua sponte*," which deprives the plaintiff of the procedural protections afforded in the normal course where a defendant files a motion to dismiss, i.e., notice and an opportunity to amend the complaint. *Gonzalez-Gonzalez v. United States*, 257

---

"'[I]n the *usual* case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id*. (quoting *Carnegie-Mellon Univ*., 484 U.S. at 350 n. 7). In this case, where any federal-law claims which arguably could provide the basis for supplemental jurisdiction would be dismissed in the context of a 28 U.S.C. § 1915 screening, all of the factors would weigh in favor of the court's declination of continuing jurisdiction. *See, e.g., Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) (citing *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir.1995)) (observing that "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation").

[8] Fagan alleges that he lives in Connecticut and that the defendant corporation, MMLISI, is a Massachusetts resident.

F.3d 31, 37 (1st Cir. 2001). However, in this case, Plaintiff was already provided those procedural protections and more in the context of litigating *Fagan I*. Accordingly, this case presents an appropriate exercise of that power.

For these reasons, it is this Court's RECOMMENDATION that Plaintiff's Motion to for Leave to Proceed *in forma pauperis* be granted, but that the case be dismissed pursuant to 28 U.S.C. § 1915(e)(2).[9]

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED: April 24, 2015

---

[9] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.